**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| ) | |
| ) | Chapter 11 |
| ) | |
| IN RE: KINSEY & KINSEY, INC.,     ) | Case No. 22 BK 6775 |
| ) | |
| Debtor,     ) | Honorable Carol A. Doyle |
| ) | |
| ) | Hearing Date: June 30, 2022 |
| ) | |
| ) | Hearing Time: 10:00 a.m. |
| ) | |

**NOTICE OF MOTION**

TO:     See attached Certificate of Service and Service List

**PLEASE TAKE NOTICE** that on June 30, 2022, at 10:00 a.m., I will appear before the Honorable Carol A. Doyle, or any judge sitting in that judge's place, and present BELLIN MEMORIAL HOSPITAL, INC.'S MOTION: (1) TO DISMISS THIS CASE OR CONVERT TO CHAPTER 7 PURSUANT TO 11 U.S.C. § 1112(b), OR (2) TO REMOVE THE DEBTOR IN POSSESSION FOR CAUSE UNDER 11 U.S.C. § 1185(a), a copy of which is attached and is hereby served upon you.

**This motion will be presented and heard electronically using Zoom for Government**. No personal appearance in court is necessary or permitted.

**To appear and be heard on the motion**, you must do the following: To appear by video, use this link: https://www.zoomgov.com/. Then enter the meeting ID and password.

**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and password.

**Meeting ID and password**. The meeting ID for this hearing is **161 155 8289** and the password is

**Doyle742**. This meeting ID and password can also be found on the judge's page on the court web

site.

**If you object to this motion** and want it called on the presentment day above, you must file a

Notice of Objection no later than two (2) business days before that date. If a Notice of Objection

is timely filed, the motion will be called on the presentment date. If no Notice of Objection is

timely filed, the court may grant the motion in advance without a hearing.

Dated: June 22, 2022                                Respectfully submitted,

                                                    */s/ Daniel R. Brown*
                                                    Christopher J. Barber (ARDC # 6192190)
                                                    Daniel R. Brown (ARDC #6299184)
                                                    Williams & John Ltd.
                                                    233 S. Wacker Dr., Ste. 6800
                                                    Chicago, IL 60606
                                                    Phone: 312.443.3200
                                                    Fax: 312.630.8500

                                                    *Attorneys for Bellin Memorial Hospital, Inc.*

## CERTIFICATE OF SERVICE

I, Daniel Brown, certify that I caused a copy of the attached document to be served upon

the parties listed on the service list below via ECF, email, and regular U.S. Mail on June 22, 2022,

as noted on the service list below

Dated: June 22, 2022                          Respectfully submitted,

                                              */s/ Daniel Brown*
                                              Daniel Brown

### Service List

| Recipient | Service Method |
|---|---|
| Chester H. Foster, Jr.<br>Foster Legal Services, PLLC<br>16311 Byron Drive<br>Orland Park, IL 60462 | ECF |
| Patrick S Layng Office of the U.S. Trustee, Region 11<br>ES.ECF@usdoj.gov | ECF |
| Byline Bank<br>c/o Martin Wasserman<br>Carlson Dash, LLC<br>216 S. Jefferson Street, Suite 504<br>Chicago, IL 60661<br>mwasserman@carlsondash.com, | ECF |
| Small Business Administration<br>c/o Kate O'laughlin<br>409 3rd St. SW, Suite 7211<br>Washington, DC 20416<br>Kate.O'Loughlin@sba.gov | Email |
| Ken Novak<br>Ken Novak & Associates, Inc.<br>3356 Lake Knoll Drive Northbrook, IL 60062<br>(847) 291-7718<br>knovak@kennovakinc.com | Email |
| Kimberly Bacher<br>OFFICE OF THE U.S. TRUSTEE<br>53 Pleasant Street, Suite 2300<br>Concord, NH 03301 | U.S. Mail |

| Recipient | Service Method |
| --- | --- |
| ABH Technologies, Inc.<br>8961 Gentle Mist Circle<br>Heather Bindbeutel<br>Ooltewah, TN 37363-3000<br>Heather.bindbeutel@abhtechnologies.Com | Email |
| Accurate Office Supply<br>260 Gerzevske Lane<br>Carol Stream, IL 60188-2049 | U.S. Mail |
| Amen Consulting<br>7323 S. Syracuse Street<br>Centennial, CO 80112<br>d.amen@kinsey.com | Email |
| Applesauce Consulting, Ltd.<br>2639 Lee Drive<br>Pleasant View, TN 37146-8028<br>lisa@applesauceconsulting.com | Email |
| Atos Digital Health Solutions, Inc.<br>PO Box 78000 Dept 772066<br>Detroit, MI 48278-1177<br>sean.galt@atos.net | Email |
| Bank of America<br>PO BOX 851001<br>Dallas, TX 75285-1001 | U.S. Mail |
| Bradley Kinsley<br>668 Essex Road<br>Glen Ellyn, IL 60137<br>b.kinsey@kinsey.com | Email |
| Daniel B. Kinsey<br>304 E. Harrison<br>Wheaton, IL 6018<br>d.kinsey@kinsey.com | Email |
| Dr. Thomas Gibbs<br>Glen Park Dental LLC<br>26 N. Park Blvd.<br>Glen Ellyn, IL 60137 | U.S. Mail |
| Fritz K. Huszagh<br>3841 Brittany Road<br>Northbrook, IL 60062<br>fhuszagh@fkhlegal.com | Email |
| Intellias<br>P.O. Box 1269<br>Allen, TX 75013-8043<br>cmitchell@intellias.com | Email |

| Recipient | Service Method |
|---|---|
| Mandolino Investments<br>617 S. Club House Road<br>Virginia Beach, VA 23452<br>g.henson@kinsey.com | Email |
| Mike Nitka<br>6N422 Foley Lane<br>Saint Charles, IL 60175<br>m.nitka@kinsey.com | Email |
| Mike Oswald<br>45 Sunset View Road<br>Deer Park, IL 60010<br>m.oswald@kinsey.com | Email |
| Minds At Meet Consulting, LLC<br>1446 Woodbine Street<br>Clearwater, FL 33755<br>a.rowe@kinsey.com | Email |
| Nicode Tech, LLC<br>1400 Veterans Memorial Pkwy # 134<br>Mableton, GA 30126 | U.S. Mail |
| Northwestern Mutual Life<br>1475 E. Woodfield Road Suite 900<br>Schaumburg, IL 60173<br>john.tibensky@nmfn.com | Email |
| The Hanover Insurance Group<br>PO Box 580045<br>Charlotte, NC 28258-0045<br>TJ.Connors@thehortongroup.com | Email |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| ) | |
| ) | Chapter 11 |
| ) | |
| IN RE: KINSEY & KINSEY, INC.,   ) | Case No. 22 BK 6775 |
| ) | |
| Debtor,   ) | Honorable Carol Doyle |
| ) | |
| ) | Hearing Date: June 30, 2022 |
| ) | |
| ) | Hearing Time: 10:00 a.m. |
| ) | |

**BELLIN MEMORIAL HOSPITAL, INC.'S MOTION: (1) TO DISMISS THIS CASE OR
CONVERT TO CHAPTER 7 PURSUANT TO 11 U.S.C. § 1112(b), OR (2) TO REMOVE
THE DEBTOR IN POSSESSION FOR CAUSE UNDER 11 U.S.C. § 1185(a)**

Creditor and party in interest Bellin Memorial Hospital, Inc. ("Bellin"), through the undersigned counsel, respectfully moves this Court to dismiss this case under 11 U.S.C. § 1112(b), to convert it to a chapter 7 liquidation under 11 U.S.C. § 1112(b), or to remove the debtor in possession for cause under 11 U.S.C. § 1185(a). In support of this motion, Bellin states as follows:

## <u>INTRODUCTION</u>

Since being found liable to Bellin in state court in Wisconsin, Debtor and debtor in possession Kinsey & Kinsey Inc. (the "Debtor") has been using fraudulent and blatantly unlawful tactics to avoid paying Bellin's $786,749.29 judgment. In addition, the Debtor gratuitously transferred over $793,000 to its two owners, Dan and Brad Kinsey, in the days leading up to and immediately following Bellin's trial victory in November 2021. If that money had remained with the Debtor, as it should have, it would have been sufficient to satisfy Bellin's judgment in full. Now the Debtor claims "financial difficulty" that is the direct result of these large, gratuitous transfers to insiders. On top of that, the Debtor failed to honestly and accurately report its insider dealings—omitting over $120,000 of transfers to insiders from its filings with this Court.

The Debtor has also paid its preferred creditors in direct violation of Illinois law. On March 21, 2022, the Debtor was served with a citation to discover assets issued by the DuPage County Circuit Court. That citation prohibited the Debtor from making any payments to creditors without the court's authorization. But the Debtor decided to pay its preferred creditors anyway, and paid out over $716,000 after the citation was served, while not paying any money towards Bellin's judgment. On top of that, the Debtor *again* failed to honestly and accurately report its financial affairs to this Court, omitting *any* payments to creditors during the preference period despite evidence of over $734,000 of such payments being made.

Now, as a debtor in possession controlled by Dan and Brad Kinsey, there is no chance that the Debtor will seek to claw back the over $793,000 gratuitously paid to insiders, or the $734,000 paid to preferred creditors. This case was filed precisely to prevent such an occurrence. Instead, the Debtor wants to use this case solely to thwart Bellin's efforts to collect its valid judgment.

## **BACKGROUND**

The Debtor is an information technology consulting company based in Glen Ellyn, Illinois that is owned and controlled by Brad and Dan Kinsey. [Docket No. 1]. Bellin is a non-profit hospital based in Green Bay, Wisconsin. Ex. 1, ¶ 12. Bellin hired the Debtor in September 2015 to implement certain software, including a program called Infor Lawson Global HR ("GHR"). *Id.* at ¶37. Bellin paid the Debtor over $1.5 million for the work, but the Debtor did not implement GHR. *See* Ex. 1, ¶4. The Debtor refused to fix the issue unless it was paid more. Ex. 1, ¶ 7. Bellin then sued the Debtor, Brad Kinsey, and one of the Debtor's employees in Wisconsin. *See* Ex. 1.

At trial, the Wisconsin court directed verdict in Bellin's favor on its breach of contract claim and the jury awarded Bellin $1.39 million in damages. Ex. 2. p. 7. The verdict was later reduced to a $786,749.29 judgment due to the court's ruling on the Debtor's post-verdict motion. Ex. 3. Bellin has since attempted to collect the judgment in the Circuit Court in DuPage County,

2

where the Debtor is located. Bellin has also filed an appeal in Wisconsin, not disputing the validity

of the $786,749.29 judgment, but only challenging the Wisconsin court's post-verdict decision to

strike $640,000 from the jury's award. Ex. 4.[1]

## I.    The Debtor's gratuitous transfers to insiders in the days leading up to and immediately following the jury's verdict in Wisconsin

Bellin filed a collection action in DuPage County, Illinois, to domesticate and collect its

Wisconsin judgment. The DuPage County court issued a Citation to Discover Assets (the

"Citation") to the Debtor and the Debtor was served with the Citation on March 21, 2022. Ex. 5.

In response to the Citation, the Debtor was required to produce certain documents to Bellin,

including recent bank statements.

The Debtor's bank statements for its primary business account at Byline Bank show that

the Debtor transferred over $793,000 of the Debtor's available cash to its insiders, Dan and Brad

Kinsey, in the days leading up to and immediately after the Wisconsin jury's verdict. Ex. 6, pp.

2,8. These transfers include: (1) November 3, 2021, the Debtor transferred $272,360.00 to a

deposit account held jointly by Brad and Dan Kinsey; (2) on November 4, 2021, the Debtor

transferred $896.74 to the same account; (3) on November 5, 2021, the Debtor transferred $95,000

to a UBS account for a mortgage on Brad Kinsey's personal residence; (4) on November 8, 2021

the Debtor transferred $25,000 to that same UBS account; and (5) on December 10, 2021, the

Debtor transferred another $400,000 to Brad and Dan Kinsey's joint account. *See id*. The records

produced by the Debtor do not show any consideration provided for these transfers.

Bellin requested that the Debtor produce records regarding these transactions. Ex. 7, p. 2.

The Debtor refused to produce any such records, with its counsel claiming that the deposit account

---

[1] Pursuant to Wisconsin law, the filing of an appeal does not stay the enforcement or execution of a judgment. *See* Wis. Stat. § 808.07(1) ("An appeal does not stay the execution or enforcement of the judgment or order appealed…").

"is a joint personal account at Byline Bank in the name of Brad and Dan Kinsey." *Id.*, p. 1. The Debtor's counsel also confirmed that the UBS account "was a mortgage on Brad [Kinsey] and his wife's residence[.]" *Id.*

## II.     The Debtor's violation of the DuPage County Citation by paying debts to preferred creditors while not paying anything to satisfy Bellin's judgment

Illinois law prohibits a citation recipient from "making or allowing any transfer or other disposition of" property of the judgment debtor. 735 ILCS 5/2-1402(f)(1). The Debtor's bank statements, however, show that the Debtor transferred money out of its accounts *even after being served with the Citation*. Specifically, the Debtor transferred $200,742.94 out of its account in March after being served with the Citation on March 21, 2022; and an additional $515,329.97 in April 2022. *See* Ex. 6. Thus, in March and April, *after being served with the Citation*, the Debtor disbursed $716,072.91. *Id*. Copies of the checks disbursing money in March and April 2022 show that the disbursements were made by Brad and Dan Kinsey. *Id*. The Debtor has not produced its May or June 2022 bank statements to Bellin.

## III.    The Debtor's attempts to stay execution of the judgment in three (now four) different courts

Instead of posting a bond, filing an appeal, or filing a motion for relief from judgment under Wisconsin law, the Debtor has sought the aid of three different courts—and, with this case, four different courts—to stop Bellin from collecting its judgment. First, the Debtor asked the Wisconsin court for a stay, but the Debtor's motion was denied. Ex. 8. Having no success in Wisconsin, the Debtor filed another motion to stay Bellin's enforcement of the judgment—this time as a motion for a temporary restraining order in the Northern District of Illinois. Ex. 9. The Debtor raised again the same issue that it unsuccessfully raised in the Wisconsin court—that Bellin's settlement with one of the Debtor's employees qualifies as a setoff to the judgment entered

against the Debtor.  *Id*. at p. 2. As Bellin has explained in its federal court filings, these setoff claims have no merit and the Debtor's requested injunction is barred by federal statute. Ex. 10.

Having failed to obtain a stay in two other courts, the Debtor tried again in the DuPage County collection court. On May 20, 2022, the Debtor filed a Motion to Stay and Continue Post-Judgment Proceedings. Ex. 11. The Debtor did not inform the DuPage County court that it had disregarded the Citation and spent over $716,000 since being served. Nor did the Debtor inform the court that it had transferred over $793,000 from its corporate account to its insiders leading up to and after the Wisconsin jury's verdict. The court, without the benefit of the full story, temporarily granted a stay. Ex. 12. Bellin filed a motion for reconsideration and to vacate the stay order shortly thereafter. Ex. 13. Perhaps seeing the writing on the wall—that the stay, premised on concealing key facts from the DuPage Count court about the Debtor's financial affairs, would likely be vacated—the Debtor opted to file this chapter 11 case.

**IV.    The Debtor's false statements and failures to disclose information in its filings with this Court**

The Debtor's schedules and statements of financial affairs contain false statements and material omissions. Most egregious among these is the Debtor's failure to disclose over $120,000 of transfers from the Debtor to its insiders. Part 2.4 of Form 207 requires the Debtor to identify "[p]ayments or other transfers of property made within 1 year before filing this case that benefitted any insider[.]" [Docket No. 1], p. 24. Part 13.30 of Form 207 requires the Debtor to identify "[p]ayments, distributions, or withdrawals credited or given to insiders[.]" *Id.*, p. 30. For both categories, the Debtor stated "SEE ATTACHED," referring to a printout appended to the petition and accompanying forms. The attachment identifies the salaries and $672,360 of additional distributions made to the Debtor's insiders, Dan and Brad Kinsey. *Id*, p. 32. But the Debtor fails to disclose the $120,000 paid to Brad Kinsey's UBS mortgage account, as well as an additional

5

$896 paid to the joint account of Dan and Brad Kinsey. *Id.* (attachment omitting these payments); *see also* Ex. 6, at pp. 2 (showing the $120,000 paid to Brad Kinsey's UBS mortgage account and the $896 paid to Dan and Brad Kinsey's joint account).

The Debtor also failed to disclose a number of potential preference payments. Part 2.3 of Form 207 requires the Debtor to disclose "[c]ertain payments or transfers to creditors within 90 days before filing this case[.]" [Docket No. 1], p. 24. The Debtor claimed that there were no such payments. *Id.* The Debtor's bank statements, however, reveal that the Debtor's claim is false. The Debtor's bank statements from March and April 2022 show 13 transactions totaling over $734,000 that are likely preferential payments to creditors, none of which the Debtor disclosed. Ex. 14 (qualifying transactions highlighted).[2]

Where the Debtor actually made the required disclosures, such disclosures demonstrate prepetition gamesmanship. For example, the Debtor reports undeposited checks of $248,856.93, which demonstrates that the Debtor is not depositing checks in order to avoid the effects of the citation issued by Bellin to Byline Bank. [Docket No. 1], p. 10.

The Debtor's disclosures include other omissions of note. For example, in Form 207 Part 3.7, the Debtor failed to disclose the pending federal lawsuit in the Northern District of Illinois involving the Debtor, the Debtor's insurer Philadelphia Indemnity Insurance Company ("Philadelphia"), and Bellin. In that case, Philadelphia seeks to declare that Bellin's judgment is already satisfied, despite no payment thereon, and the Debtor seeks a TRO against Bellin to stop Bellin from collecting on its Wisconsin judgment. Ex. 9. Also omitted from this disclosure is the fact that the Wisconsin breach of contract case is on appeal, rather than "Concluded," as the Debtor

---

[2] Three transactions of approximately the same amount were excluded from this analysis because such transactions appear to be payroll processing.

reports. [Docket No. 1.], p. 25. And in Schedule D, the Debtor states that for the secured debts

held by Bellin, Byline Bank, and the Small Business Administration, multiple creditors <u>do not</u>

have an interest in the same property. *Id*., at pp. 15-16. At the same time, however, all three debts

are secured by "All assets of Debtor except automobiles & IL Prepaid Taxes[.]" *Id.* All three debts

are in fact secured by the same property, but the Debtor fails to accurately report it.

**V.      The Debtor's false certifications to the Small Business Administration**

The Debtor's failure to make complete and honest disclosures to this Court is repeated in

its false certifications to the Small Business Administration (the "SBA"). The loan agreement

between the Debtor and the SBA, dated March 31, 2022, between the Debtor and the SBA (the

"SBA Loan Agreement"), attached as Exhibit 2 to the Debtor's recent cash collateral motion, is

included hereto as Exhibit 15 for easy reference. Ten days prior to signing the SBA Loan

Agreement, on March 21, 2022, Bellin served the Debtor with the Citation, which created a lien

on all of the Debtor's non-exempt personal property by operation of law. The Debtor's

certifications in the SBA Loan Agreement fail to disclose this fact. For example, the Debtor

certified that there had been "no substantial adverse change" in its financial condition since it

applied for the SBA loan. Ex. 15, p. 5. An "adverse change" expressly includes a judgment lien.

*Id.* But Despite Bellin's judgment lien from its Citation, the Debtor represented to the SBA that

no such event had occurred.

The security agreement that accompanies the SBA loan (the "SBA Security Agreement")

is attached separately hereto as Exhibit 16 for easy reference. In the SBA Security Agreement the

Debtor certified that the collateral (i.e., all of the Debtor's assets) "is free and clear of all adverse

claims, liens, or security interests[.]" Ex. 16, ¶14. Even assuming that the Debtor disclosed Byline

Bank's prior lien to the SBA, such representation was false because Bellin has an adverse claim

and lien on the same collateral. Both of these misrepresentations to the SBA were made on March 31, 2022, approximately six weeks before the Debtor filed bankruptcy.

## ARGUMENT

The Debtor engaged in egregious prepetition misconduct by gratuitously transferring over $793,000 to its insiders in the days leading up to and immediately after Bellin's jury verdict and willfully violating the DuPage County court's Citation by paying preferred creditors. It has continued such egregious misconduct in this case by omitting material facts about its transfers to insiders and payments to preferred creditors. These false statements and material omissions were done under oath, in a transparent effort to hide the reality of the Debtor's financial affairs from this Court and all parties in interest. Moreover, the Debtor filed this case for two reasons: (1) to thwart Bellin's efforts to collect its judgment and (2) to prevent the clawback of its insider transfers and payments to preferred creditors. Neither is a proper purpose for a chapter 11 case. Under these circumstances, this Court should immediately dismiss this case as a bad faith filing and for cause. In the alternative, the Court should either remove the Debtor as debtor in possession and allow the appointed trustee to manage the Debtor's affairs, or convert this case to a chapter 7 liquidation.

**I.    This chapter 11 case should be dismissed because it was not filed in good faith**

"Courts have generally recognized that Chapter 11 bankruptcy petitions are subject to dismissal for failure to file in good faith." *In re S. Beach Secs.*, 341 B.R. 853, 856 (Bankr. N.D. Ill. 2006) (citing *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 118 (3d Cir. 2004); *In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994); *In re Madison Hotel Assocs.*, 749 F.2d 410, 426 (7th Cir. 1984)). "The good faith requirement ensures that a bankruptcy furthers the underlying purposes of Chapter 11—preserving going concerns and maximizing payments to creditors." *In re S. Beach Secs.*, 341 B.R. at 856 (citing *In re Integrated Telecom*, 384 F.3d at 119; *In re Original IPFC Shareholders*, 317 B.R. 738, 749 (Bankr. N.D. Ill. 2004); *In re Int'l Oriental Rug Center*,

165 B.R. 436, 442 (Bankr. N.D. Ill. 1994)). "If the debtor's only purpose for filing the case is to delay (or defeat) a single judgment creditor, and the case has little or no ability to benefit the creditor body as a whole, then the debtor has not filed the Chapter 11 in good faith." *In re Liptak*, 304 B.R. 820, 837 (Bankr. N.D. Ill. 2004) (collecting cases).

This chapter 11 case was filed solely to delay or defeat Bellin, the Debtor's only judgment creditor, and has little or no ability to benefit the creditor body as a whole. Indeed, using its powers as a debtor-in-possession the Debtor seeks to prevent clawback actions against the Debtor's insiders for the $793,000 they gratuitously received at the end of last year. By leaving the decision to pursue these fraudulent transfers in the same hands as the beneficiaries—i.e., the Debtor's two principals who received the money—the Debtor will undoubtedly *not* pursue any clawbacks. Indeed, the Debtor failed to disclose over $120,000 of such transactions. There is no reason to believe that the Debtor's principals will suddenly act against their own interests and seek to clawback funds they received for the benefit of the Debtor's creditors. By failing to pursue over $793,000 of cash for the estate, the Debtor's chapter 11 case will not benefit the creditor body as a whole.

Moreover, using the Bankruptcy Code's automatic stay to thwart a judgment creditor like Bellin is not a valid purpose for a chapter 11 filing "if the debtor could have satisfied a judgment with funds and savings that were not being used to operate a business." *In re Liptak*, 304 B.R. 820, 830 (Bankr. N.D. Ill. 2004). The over $793,000 transferred to insiders at the end of 2021 consisted of funds and savings not being used to operate the Debtor's business. Instead of using that money to pay its debts, however, the Debtor gratuitously distributed those funds to insiders. Under these circumstances, thwarting Bellin's collection activity is not a valid justification for a chapter 11 case, and this case has not been filed in good faith.

9

In addition, courts have identified several non-exclusive factors as relevant to determining whether a bankruptcy filing is not made in good faith, including whether 1) the debtor has any assets; 2) the debtor has recently transferred assets; 3) the debtor has any employees; 4) the debtor has any cash flow to sustain reorganization; 5) the debtor has any chance of confirming a reorganization plan; 6) the debtor and one of its creditors have reached a standstill in state court litigation; 7) the debtor is trying to delay its creditors or reduce their rights; 8) there are allegations of wrongdoing by the debtor or its principals; or 9) bankruptcy offers the only possibility of preventing the loss of property. *In re S. Beach Secs.*, 341 B.R. at 856-57.

Here, several of the relevant factors are present and demonstrate that this filing was not made in good faith. First, the Debtor has recently transferred assets—specifically, over $793,000 to its insiders including over $120,000 of undisclosed transfers to or for the benefit of insiders, and over $734,000 in undisclosed payments to creditors during the preference period. The insider transfers are particularly important because if the Debtor had not made them, it could have immediately satisfied Bellin's judgment and avoided the financial woes it now claims to suffer.

Second, this entire case is about the standstill in state court litigation between Bellin and the Debtor. The Debtor lost at trial in Wisconsin and has since been trying every trick in the book to avoid paying Bellin's judgment. It sought a stay from the Wisconsin court, which was denied. It filed for a frivolous TRO in federal court. The Debtor then sought and obtained a temporary stay from the DuPage County collection court. But, as explained above, the DuPage Court was unaware of the Debtor's over $793,000 in gratuitous transfers to insiders and its violation of the Citation by making over $716,000 in payments to preferred creditors, after receiving the Citation. Once Bellin filed a motion bringing these matters to the DuPage County court's attention and asking that the

stay be vacated, the Debtor filed this chapter 11 case. This bankruptcy filing is now the <u>fourth</u> judicial forum that the Debtor has used to stop Bellin from collecting its Wisconsin judgment.

Third, this bankruptcy is another attempt to delay payment to Bellin and reduce Bellin's rights as a creditor. The Debtor has already announced its intention to strip Bellin of its status as a secured creditor. At the same time, the Debtor, as a debtor-in-possession, is controlled by the same people who (1) received over $793,000 of gratuitous prepetition transfers and (2) authorized over $716,000 of payments to preferred creditors in willful and direct violation of the DuPage County Citation. Further, over $120,000 of the gratuitous transfers to insiders were not disclosed to this Court, nor were over $734,000 of prepetition payments to preferred creditors. The Debtor is not going to claw back these transactions or seek related remedies to increase creditor distributions— but that is exactly what Bellin would do outside of bankruptcy. This case is designed to prevent Bellin from doing just that, leaving over $1.5 million of funds in the hands of the Debtor's insiders and preferred creditors while the Debtor continues to avoid paying a single penny to satisfy Bellin's judgment.

Fourth, there are allegations of wrongdoing by the Debtor and its principals. As explained above, the Debtor (1) made over $793,000 in gratuitous payments to its insiders, which likely qualify as fraudulent transfers; (2) failed to disclose over $120,000 of these payments in its filings with this Court; (3) made over $716,000 in payments to preferred creditors in violation of the DuPage County court's Citation; (4) failed to disclose over $734,000 of prepetition payments to creditors during the preference period in its filings with this Court; (5) withheld nearly $250,000 of checks from deposit to avoid the DuPage County court's Citation and the related freeze on the Debtor's bank accounts; and (5) made false certifications to the SBA regarding Bellin's judgment lien in connection with obtaining the SBA loan. This egregious malfeasance demonstrates that the

11

Debtor is not bringing this case in good faith. It has a demonstrated track record of willfully violating the law and deep dishonesty in connection with its financial affairs.

Lastly, bankruptcy does not offer the only possibility of preventing the loss of property. The Debtor cannot point to any necessary protections in bankruptcy. This action is simply another attempt to stop Bellin from continuing its collection efforts.

## II.      This case should also be dismissed for cause pursuant to the factors enumerated under Section 1112(b)(4)

In addition to lack of good faith, this case should be dismissed for cause under Section 1112(b). The Bankruptcy Code provides a non-exhaustive list of what constitutes "cause," including: (1) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; (2) gross mismanagement of the estate; (3) unauthorized use of cash collateral substantially harmful to 1 or more creditors; and (4) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter. 11 U.S.C. § 1112(b)(4). All of these factors are present here, and each warrants immediate dismissal of this case.

First, the Debtor has been overseeing and facilitating the loss to and diminution of its estate. For the court to make a finding of diminution, "[a]ll that need be found is that the estate is suffering some diminution in value." *In re Citi-Toledo Partners*, 170 B.R. 602, 606 (Bankr. N.D. Ohio (1994). There is ample evidence of the Debtor hemorrhaging money leading up to its filing of this case, unlawfully, with no signs of stopping. The Debtor shows no plans of trying to claw back the over $793,000 gratuitously transferred to insiders. Over $120,000 of such transfers are undisclosed, and the Debtor does not identify having any such claim as an asset. Similarly, the Debtor apparently has no plans to claw back the over $734,000 of payments to preferred creditors made within 90 days of filing this case. Such payments are not even disclosed. And prepetition,

12

the Debtor willfully ignored the DuPage County court's Citation and paid its preferred creditors over $716,000 in violation of Illinois law. The Debtor will undoubtedly allow these losses to persist. At the same time, there is no reasonable likelihood of rehabilitation. The Debtor filed this case to avoid paying Bellin's judgment, not to rehabilitate its business.

Second, the Debtor's actions leading up to and during the filing of this case demonstrate gross mismanagement. The Debtor believes that it can pay whomever it chooses, without regard to applicable law. And the Debtor shows no interest in clawing back these payments, all made willfully prior to filing this case. Further, the Debtor shows flagrant dishonesty in its filings with this Court thus far by omitting nearly $1 million worth of payments to insiders and payments to creditors during the 90-day preference period. Similarly, the Debtor appears to have made false certifications to the SBA to secure a $200,000 loan less than ninety days before filing its bankruptcy petition and then spent the loan proceeds before filing for bankruptcy. This mismanagement will only continue as this case progresses.

Third, prior to commencing this case, the Debtor made $716,000 in payments via unauthorized use of cash collateral. The DuPage County court's Citation expressly forbade any payments because Bellin's judgment lien holds a superior position over the Debtor's cash to any unsecured creditor. But the Debtor made those payments anyway, in violation of applicable law, and to Bellin's detriment. This action, standing alone, warrants dismissal of this case. *In re Three Partners, Inc.*, 199 B.R. 230, 237 n.9 (Bankr. D. Mass. 1995) ("The failure of [a debtor-in-possession] to seek cash collateral authorization (or obtain the necessary consents), when applicable, reveals a profound ignorance by that debtor of the responsibilities attendant to its status. In appropriate cases, such a failure should be considered in conjunction with the viability of a Chapter 11 case or the continuation of the debtor in possession.")

Finally, as explained above the Debtor's schedules and statements of financial affairs contain material omissions that do not satisfy the Bankruptcy Code's reporting requirements.

### III.    In the alternative, the Court should remove the Debtor from being a debtor-in-possession and allow the appointed trustee to manage the Debtor's estate

In a small business case under subchapter V of chapter 11, Section 1185(a) provides for the removal of a debtor as debtor-in-possession, and states as follows:

> On request of a party in interest, and after notice and a hearing, the court shall order that the debtor shall not be a debtor in possession for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor, either before or after the date of commencement of the case, or for failure to perform the obligations of the debtor under a plan confirmed under this subchapter.

11 U.S.C. § 1185(a). Because Sections 1104(a) and 1185(a) use the same language, courts may rely on authority construing Section 1104 in determining whether to remove a debtor in possession under Section 1185. *See In re Peak Serum, Inc.*, 623 B.R. 609, 614 n.1 (Bankr. D. Colo. 2020) ("where cause would exist to appoint a Chapter 11 trustee in a standard Chapter 11 case, Subchapter V affords parties-in-interest comparable remedies, including removal of the debtor-in-possession"). "[I]f the court determines cause exists, removal is mandatory." *In re Veblen West Dairy LLP*, 434 B.R. 550, 553 (Bankr. D.S.D. 2010)).

Here, ample cause exists to remove the Debtor as debtor in possession. The Debtor transferred over $793,000 to its insiders as Bellin's jury verdict was being handed down, and then claimed an inability to pay Bellin's judgment for less than that amount. It paid preferred creditors over $716,000 in direct violation of the DuPage County court's Citation. It made false statements to the SBA in order to obtain a $200,000 loan. And when it filed this case, the Debtor made a number of fraudulent misrepresentations that included omitting over $120,000 of transfers to insiders and falsely claimed that no reportable payments were made to creditors during the

preference period. This litany of misconduct includes fraud, dishonesty, incompetence, and gross mismanagement, and constitutes sufficient cause to remove the Debtor from managing the estate.

**IV.      In the alternative, this Case should be converted to a chapter 7 liquidation**

To the extent this Court prefers not to dismiss this case outright or allow the appointed trustee to take over management of the Debtor's affairs, this case should be converted to a chapter 7 liquidation. The Debtor reports that its revenue from 2020 was over $3.8 million and its revenue from 2021 was over $4.6 million. [Docket No. 1], p. 24. This year, however, the Debtor reports earning only $857,108 in nearly six months of operations. *Id.* The best explanation for this precipitous decline in revenue is that the Debtor's principals have moved on and started a new business. They appear to have chosen to abandon the Debtor—likely in retaliation to Bellin's insistence that its judgment be paid—in favor of continuing their business with a new entity that is not so encumbered. This chapter 11 case is thus little more than a farce—an attempt to liquidate without exposing the Debtor's insiders and preferred creditors to costly clawback actions. This Court should not allow the Debtor to game the bankruptcy system for the personal enrichment of its insiders and to preserve profitable business relationships with preferred vendors—relationships that the Debtor's principals will simply use to establish and develop a parallel business without the same looming liabilities.

<u>**CONCLUSION**</u>

For the foregoing reasons, Bellin respectfully requests that this Court enter an order (1) dismissing this chapter 11 case with prejudice, (2) in the alternative, removing the Debtor as debtor in possession and allowing the appointed trustee to take over management of the Debtor, or (3) in the alternative, converting this case to a chapter 7 liquidation.

Dated: June 22, 2022     Respectfully submitted,

*/s/ Daniel R. Brown*

*One of the Attorneys for Bellin Memorial Hospital, Inc.*

Christopher J. Barber (ARDC # 6192190)
Daniel R. Brown (ARDC # 6299184)
Williams & John Ltd.
233 S. Wacker Dr., Ste. 6800
Chicago, IL 60606
Phone: 312.443.3200
Fax: 312.630.8500